## SUPREME COURT.

### WILLIAM C. WETMORE, executor, &c., agt. ENOCH C. ROBERTS and others.

A *foreclosure* of a mortgage under the *statute*, without giving a junior mortgagee *notice*, does not take away his right to *redeem*.

An *assignee*, whose assignment has been recorded, has the same rights as incumbrancer as the *mortgagee*—consequently has the same right to redeem.

Where the *assignee* of a junior mortgage, whose assignment was recorded, was not notified of a statute foreclosure, and sale under a prior mortgage—*held*, that he had a right to *redeem*. But it appearing that at the time of such sale, the interest of the assignee in the premises was not worth anything; and that the purchaser purchased in good faith, supposing he was getting a good title in fee to the premises, went on and made valuable permanent improvements —*held*, in an action by the assignee for a foreclosure of his junior mortgage, and sale of the premises, that the value, at the time of this latter sale, of the *permanent improvements* so made upon said premises, must be deducted; out of which sums the mortgagees of the purchaser who made the improvements, and other liens created by him, were to be paid according to their priority, and the balance, if any, paid to the original purchaser—the remainder, if any, after such deduction, to be applied to the·junior mortgage assignee and his costs.

This was an action to foreclose a mortgage, made by the defendants, Enoch C. Roberts, Frederick W. Allen, and William Hickock, to Daniel A. Galloway, on the 28th of July, 1842, to secure the sum of $2,129.25, upon certain premises situated in the town of Waterford, N. Y., consisting of water-power, which were then subject to a mortgage of $1,500, previously given by John Pettit and wife (from whom the mortgagors in this case derived title) to one Mahala Van Nort; subject to the payment of this last-mentioned mortgage, the mortgage in this action was given. Daniel A. Galloway, on the 26th of August, 1842, duly assigned this mortgage to John H. Howland of the city of New-York. The mortgage and assignment were recorded in Saratoga county, clerk's office, September 3d, 1842. The plaintiff is the executor of the estate of John H. Howland, deceased. The complaint states that the whole principal sum of $2,129.25 is due, with interest thereon from

the 28th of July, 1848; and demands that the premises may be decreed to be sold according to law; that the moneys arising from the sale may be brought into court; that the plaintiff may be paid the amount due on the bond and mortgage, with interest to the time of such payment, and the costs and expenses of the action so far as the amount of such moneys properly applicable thereto will pay the same; and that the defendants, Enoch C. Roberts, Frederick W. Allen, and William Hickock, may be adjudged to pay any deficiency which may remain after applying all of said moneys properly applicable thereto; and that the plaintiff may have such other or further relief, or both, in the premises as shall be just and equitable.

The defendants, John Cramer, committee of the estate of Charles Burr, Edward F. Bullard, Francis S. Claxton, and Charles Wetmore, put in their joint and several answer to the complaint; by which it appeared that the mortgage upon said premises given to Mahala Van Nort for $1,500, dated June 17, 1839, and recorded July 19, 1839, was afterward duly sold and assigned to Charles Burr, a lunatic, of whose estate John Cramer was the committee; that on the 22d day of November, 1849, the sum of $78.93 was due and unpaid thereon; and on that day notice that said mortgage would be foreclosed by a sale of the mortgaged premises on the 23d day of February, 1850, was duly given and published as the statute requires, and by serving a copy at least twenty-eight days prior to the day of sale on all persons having a lien on said premises, and upon the subsequent mortgagees, including said Galloway; that on the said 23d day of February, 1850, the said premises were duly sold at public auction to Alfred W. Sexton, of Waterford, N. Y.; that said premises were sold in parcels, and the whole bids amounted to $85, being less than the amount due and unpaid on said mortgage, including costs of foreclosure; that said premises were then subject to four or five years' back rent; that they sold for all they were worth at that time, as the buildings on said premises were totally destroyed by fire in July, 1849. Subsequent to the mortgage sale, the defendant, Claxton, purchased said premises of said Sexton, and erected buildings

thereon of the value of over $6,000, in good faith, and then occupied the same with the defendant, Wetmore, as partners in the manufacture of axes, &c. The defendants therefore state that said Claxton is the owner of said premises in fee, discharged of and from the lien of the plaintiff's mortgage.

It further appeared that the defendants, Cramer, as committee of Burr and Bullard, in 1850 and 1851, advanced to Claxton, for the purpose of building on said premises, the sum of $3,000, and took two separate bonds of Claxton and mortgages upon the premises as security; which mortgages, principal and interest for one or two years, were then due. These defendants alleged that they made the loans, and said buildings were erected in good faith, believing that said Claxton owned said premises, and had a good title thereto; that said premises were worth $6,000 more than they were when they were purchased by said Claxton, by reason of said permanent improvements. They allege, on information and belief, that the plaintiff had knowledge of the mortgage sale previous to the sale to Claxton; and also had knowledge that Claxton was about to erect said buildings previous to their erection; and denied that defendants' interest accrued subsequent to the lien of the plaintiff's mortgage; and ask that they may be first paid if the plaintiff shall elect to redeem said premises.

The cause was tried by the court in June, 1853. The evidence did not alter the facts, as substantially stated in the pleadings.

> GEORGE G. SCOTT, *for plaintiff*.
> E. F. BULLARD & C. CRAMER, *for defendants*.

HAND, Justice. The affidavit of the service of notice of sale on Galloway and others was presumptive evidence of the service. (2 *R. S.* 547, § 12, *and* § 10, *as amended by the act of* 1844, *Ch.* 346, § 2; Arnold agt. McClure, 4 *Den.* 41; Cohoes Co. agt. Goss, 13 *Barb.* 137.)

Recording a mortgage, or an assignment of a mortgage, it is said, is not notice to a prior mortgagee. (Stuyvesant agt. Hone, 1 *Sandf. S. C. R.* 419; King agt. McVickar, 3 *id.* 192; and

see New-York Life & Trust Co. agt. Smith, 2 *Barb. S. C. R.* 82; Reed agt. Marsh, 10 *Paige*, 413; Williams agt. Rubeck, 1 *Hoff. C. R.* 359; Cheeseboro agt. Millard, 1 *J. C. R.* 414; James agt. Morey, 2 *Cow.* 246; Roberts agt. Jackson, 1 *Wend.* 485, 1 *R. S.* 762, §§ 37, 38.)

But a foreclosure by advertisement under the statute, without giving a junior mortgagee notice, does not take away his right to redeem. (2 *R. S.* 346, § 8, *as amended by* § 4 *of Chap.* 346, *of laws of* 1844; Vanderkemp agt. Shelton, 11 *Paige*, 28; and see King agt. Dantz, 11 *Barb.* 191; James agt. Stull, 9 *Barb.* 482; Pardee agt. Van Auken, 3 *id.* 537.) The assignment is not notice to the mortgagor for some purposes. (1 *R. S.* 763, § 41.) But an assignee, whose assignment has been recorded, I think has the same rights as incumbrancer as the mortgagee. (1 *R. S.* 762, §§ 37, 38.) The plaintiff, therefore, has a right to redeem.

But upon what terms it may be done, is another question. The defendants, Claxton, Cramer, and Bullard, insist that the value of improvements made by Claxton, since he purchased of Sexton, should be allowed to Claxton or his mortgagees. If Claxton is so entitled, his mortgagees have a preference as to that part of the fund payable to him.

As between mortgagee and mortgagor, clearly no such claim can be allowed. The mortgagee in full possession can not thus burden the right of redemption. He may be allowed for repairs and for protecting the title, and is not obliged to lay out anything more. (Cable agt. Moore, 1 *J. C. R.* 387; Landon agt. Hooper, 6 *Beav.* 246, 2 *Stor. E. Ju.* 1016 *b.*; and see Bell agt. Mayor of New-York, 10 *Paige*, 73; Green agt. Biddle, 8 *Wheat.* 1; Russell agt. Blake, 2 *Pick.* 505; Hughes agt. Williams, 12 *Ves.* 493; Godfrey agt. Watson, 3 *Atk.* 517.) He is liable for the fair rents and profits actually received, and no more; unless lost by his wilful default or gross negligence. (4 *Kent.* 166; Van Buren agt. Olmsted, 5 *Paige*, 1; Hughes agt. Williams, 12 *Ves.* 493.) But it is said Claxton is a purchaser without notice, and was ignorant of this claim when he made the improvements. From the testimony in this case, it is pretty clear that he

had no actual knowledge; though the assignment was notice so far as to prevent the foreclosure of the prior mortgage from cutting off the right of redemption.   The rights of the mortgagors, however, were foreclosed by that sale, and the property sold for all that it was worth.  As the matter stood then, the interest of the plaintiff was not worth one dollar.   Claxton undoubtedly supposed he was owner, and has expended about $6,000 in improvements.   Has equity no power to give him relief?   Where the owner of real estate has a perfect remedy at law, and has been guilty of no fraud, and there is no acquiescence, he is not obliged to pay for improvements, though made in good faith. (Putnam agt. Ritchie, 6 *Paige*, 390; 2 *Sto. Eq. Jur.* § 799, *a & b*, 1237–8.)  But it is sometimes otherwise, when he is obliged to apply to equity for relief.  Then he must do equity. (*Id.*)  And in a few cases the mortgagee has been allowed the value of his permanent improvements. (Benedict agt. Gilman, 4 *Paige*, 59; Exton agt. Graves, 1 *Vern.* 178; Quanell agt. Bickford, 1 *Madd. R.* 270; Whalley agt. Whalley, *id.* 484; and see 4 *Kent.* 167; Robinson agt. Ridsey, 6 *Madd. R.* 2; Clark agt. Abbott, 15 *Vin.* 473; Reed agt. Reed, 10 *Pick.* 398; Smith agt. Sinclair, 5 *Gilman's R.* 108; Hardy agt. Reeves, 4 *Ves.* 480; Conway agt. Alexander, 7 *Cranch*, 218.)

In Benedict agt. Gilman, the subsequent liens were judgments.   But a junior mortgage and a judgment are both incumbrances; and the revised statutes, under which the mortgages in that case were foreclosed, expressly preserved the rights of a judgment creditor on a statute foreclosure. (2 *R. S.* 546, § 8, 1*st ed.*)   After such foreclosure, the better opinion seems to be that he has only an equity of redemption, a mere lien. (Post agt. Arnot, 3 *Den.* 344; Benedict agt. Gilman, *supra;* Vroom agt. Ditmars, 4 *Paige*, 526; 1 *Hill*, 110; 6 *id.* 69.)   A mortgage in this state has been deemed nothing more. (Astor agt. Miller, 2 *Paige*, 68; Astor agt. Hoyt, 5 *Wend.* 602; Waring agt. Smith, 2 *Barb. C. R.* 179.)   And the principle, decided in Benedict agt. Gilman, applies to mortgages as well as judgments.  If so, the plaintiff must then go to equity.  Indeed, he is seeking relief there.   And, under all the circumstances, I

think he must allow Claxton the value of his permanent im-provements. I do not put it on the ground that the executor had actual notice of the foreclosure before Claxton purchased, and stood by while he was expending the money. (2 *Stor. Eq. Jur.* § 1,237.) But on the ground that Claxton, having purchased and improved as owner and in good faith, and the interest of the plaintiff at the time of the sale being of no value, it would be unjust for a court of equity to take from the former to give to the latter the value of these improvements. The mortgagees of Claxton, or their solicitors, had, or were chargeable with, notice; but they are creditors of Claxton; and if he is protected, they must be paid out of what he received.

As the premises have been occupied most of the time since the sale, the interest that would have accrued on the balance due on the Van Nort mortgage may be considered equal to the rents and profits of the property in the condition in which it was purchased.

The premises must be sold, and out of the avails $80.30 due on the Van Nort mortgage on the 23d day of February, 1850, and the value at the time of the sale of any permanent improvements thereon, made by Claxton before the commencement of this suit, must be deducted, out of which sums the mortgagees on the property given, and other liens created by him, are to be paid according to their priority; and the balance, if any, paid to Claxton. The remainder, after such deduction, must be applied to the payment of the claim of the plaintiff and his costs; and he must have judgment against the defendants, Roberts, Allen, and Hickock, for any deficiency. And if there should be a surplus of this portion of the preceeds, after *such* payment, it must be applied to extinguish other subsisting liens, if any, on the property, according to their priority. As between the plaintiff and the defendants, Claxton, Burr, Cramer, and Bullard, neither of these parties can have costs against the other.